UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| VANGELEAN URBANSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL NO. 3:07cv017 |
| | ) | |
| TECH DATA, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

This matter is before the court on a "Motion to Dismiss Plaintiff's Amended Complaint" filed by the defendant, Tech Data, on September 7, 2007. The plaintiff, Vangelean Urbanski ("Urbanski"), proceeding pro se, has failed to file a response[1].

Also before the court is a "Motion for Judgment on the Pleadings" filed by Urbanski on October 2, 2007. Tech Data filed a motion to strike Urbanski's motion on October 10, 2007. On this same date, Tech Data filed a reply in support of its motion to dismiss. Urbanski filed a brief in support of her motion for judgment on the pleadings on October 26, 2007, and Tech Data filed a reply in support of its motion to strike on November 7, 2007.

For the following reasons the motion to dismiss will be granted and the motion for judgment on the pleadings will be stricken.

Discussion

On August 17, 2007, Urbanski filed her Amended Complaint against Tech Data. In her Amended Complaint, Urbanski alleges the following sixteen claims against Tech Data: (a)

---

[1] On September 10, 2007, this court entered an order notifying Urbanski of the motion to dismiss and the legal ramifications of failing to respond to the motion. The court instructed Urbanski to file her response to the motion by October 3, 2007.

intentional and malicious breach of contract; (b) detrimental reliance (promissory estoppel); (c) tortious interference with contract; (d) constructive fraud; (e) breach of covenant of good faith and fair dealing; (f) wrongful termination; (g) fraudulent misrepresentations; (h) fraudulent inducement; (I) violation of U.S. Labor Laws; (j) defamation of character with intentional and malicious intent; (k) intentional and malicious infliction of emotional distress; (l) discrimination in the formation and enforcement of a contract under 42 U.S.C. § 1981 of the Civil Rights Act of 1866 ("§ 1981"); (m) discrimination in hiring practices and in promotion and hiring of a member of a protected class under Title VII of the Civil Rights Act of 1964 ("Title VII"); (n) denial of benefits to a member of a protected class under Title VII; (o) denial of benefits to a member of a protected class under § 1981; and (p) bait and switch advertisement ("false advertisement").

  Urbanski's Amended Complaint states that she was recruited to work for Tech Data as a Data Control Analyst. (Amended Complaint, p. 1.) Urbanski alleges that Tech Data convinced her to take the temporary position with a "promise to be made a permanent employee after 2 months of good performance." (Amended Complaint, p. 2.) Urbanski further alleges that she left a temporary assignment with Ely Chemical, where she had "an opportunity to interview for permanent employment," for the temporary assignment at Tech Data. Urbanski alleges that her assignment with Tech Data began on March 20, 2006. On May 28, 2006, at the conclusion of the two months, Tech Data advised Urbanski's placement agency that it had decided to end her employment. (Amended Complaint, p. 8.)

  To survive a Rule 12(b)(6) motion to dismiss, Urbanski's Amended Complaint must contain "enough factual matter (taken as true) to suggest" that Urbanski has a "plausible entitlement to relief." <u>Bell Atlantic Corp. v. Twombly</u>, 127 S. Ct. 1955, 1956-57 (2007). It is

2

not enough to show a "possibility" of "entitlement to relief"; rather, the complaint must contain "allegations plausibly suggesting (not merely consistent with)" a valid claim. Id. at 1966.

In support of its motion to dismiss, Tech Data first claims that Urbanski's fraudulent inducement claim (Paragraphs a1 and a24) fails to state a claim. Fraudulent inducement occurs when a party is induced through fraudulent misrepresentations to enter into a contract. Lightening Litho, Inc. v. Danka Industries, Inc., 776 N.E.2d 1238, 1241 (Ind. Ct. App. 2002). As discussed below regarding misrepresentations, Urbanski cannot state a claim for fraudulent misrepresentation. Thus, Urbanski cannot state a claim for fraudulent inducement. Moreover, Urbanski does not, as part of her Amended Complaint, seek to rescind any alleged contract, but seeks to affirm the contract and seek damages. In such a circumstance, Indiana limits Urbanski's damages to the "benefit of her bargain." Litho, 776 N.E.2d at 1241-1242. Urbanski's Amended Complaint indicates that she has already received the benefit of the alleged unconditional agreement of Tech Data—she performed temporary work for Tech Data for two months, at which time her direct manager, Glenn Pensyl, decided that her performance was not sufficient to make her a "good fit." (Amended Complaint, p. 5.)

Tech Data additionally asserts that Urbanski has failed to state a claim for fraudulent misrepresentation (Paragraph a2).  A claim of actual fraud cannot be predicated upon promises of future performance. Blaising v. Mills, 374 N.E.2d 1166, 1169 (Ind. App. Ct. 1978) (defendant allegedly promised to reconcile with his plaintiff-former spouse premised on receipt of certain property). Instead, an action for fraud can only be maintained for representations of existing facts. Id. However, the alleged misrepresentation of which Urbanski complains is Tech Data's failure to perform an action in the future: to "make me a permanent employee after 2 months of

3

good performance." (Amended Complaint, p. 3). As Tech Data correctly argues, such an alleged misrepresentation of future intentions cannot support a claim of fraudulent misrepresentation and must be dismissed.

Moreover, Indiana law does not permit a former employee to utilize a claim of fraudulent misrepresentation against an employer to avoid a failure to comply with the statute of frauds. Mehling v. DuBois County Farm Bureau Cooperative Association, Inc., 601 N.E.2d 5, 8 (Ind. App. Ct. 1992); Whiteco Industries, Inc. v. Kopani, 514 N.E.2d 840, 844 (Ind. App. Ct. 1987). In Whiteco, the alleged oral employment agreement was for a period in excess of one year. When the plaintiffs were terminated within several months of their employment, they brought a lawsuit claiming fraudulent misrepresentation and promissory estoppel. The Whiteco court upheld the lower court's rejection of the claim, finding that "a violation by one of the parties of an oral agreement which is within the statute of frauds. . . or refusal to perform, is not itself a fraud. . . from which courts will grant relief." Whiteco, 514 N.E.2d at 844. See also, Wior v. Anchor Industries, Inc., 669 N.E.2d 172, 173-174 (Ind. Sup. Ct. 1996) (after recruiting employee from an out-of town position and hiring employee with the commitment of "sound future, long term employment" likely to be 20 years, the employer shortly thereafter terminated plaintiff's employment "because he did not 'fit in'").  Accordingly, Urbanski's fraudulent misrepresentation claim will be dismissed.

Next, Tech Data claims that Urbanski's promissory estoppel count (paragraph a3) fails to state a claim. As with the case of fraudulent misrepresentation, Indiana law does not permit a former employee to utilize a claim of fraudulent misrepresentation against an employer to avoid a failure to comply with the statute of frauds. Whiteco, 514 N.E.2d at 844.  Thus, as with her

4

claim of fraudulent misrepresentation, Urbanski's promissory estoppel claim must be dismissed.

Urbanski alleges breach of the covenant of good faith and fair dealing in Paragraph a4 of her Amended Complaint. Tech Data contends that the covenant of good faith and fair dealing is not available to Urbanski. As noted below with respect to Urbanski's claim of breach of contract, any relationship she had with Tech Data was at-will. In Indiana, an at-will employee is not entitled to utilize the doctrine of good faith and fair dealing. Mehling v. DuBois County Farm Bureau Cooperative Association, Inc., 601 N.E.2d 5, 7, 9 (Ind. App. Ct. 1992) (plaintiff's oral contract did not satisfy the statute of frauds, making her an employee at-will, and Indiana does not recognize a covenant of good faith and fair dealing to an at-will employee); Hamblen v. Danners, Inc., 478 N.E.2d 926, 928-929 (Ind. App. Ct. 1985)(same). Thus, Urbanski's claim alleging breach of the covenant of good faith and fair dealing will be dismissed.

Urbanski alleges "bait and switch advertisement" in Paragraph a5 of her Amended Complaint. Tech Data asserts that this count fails to state a claim. Urbanski alleges that she was promised permanent employment with Tech Data and Tech Data advertised the permanent position on Monster.com until April 1, 2006. Urbanski relies on her Exhibit VUPPAD to support her claim. However, as Tech Data notes, Exhibit VUPPAD does not indicate that the position was advertised as a permanent position. Therefore, Urbanski's claim for "bait and switch advertising" fails and will be dismissed.

Urbanski alleges tortious interference with contract in paragraph a7 of her Amended Complaint. Tech Data contends that Urbanski has failed to state a claim. There are five elements necessary for recovery for tortious interference with contract: (1) existence of a valid

5

and enforceable contract; (2) defendant's knowledge of the existence of the contract; (3) defendant's intentional inducement of breach of that contract; (4) the absence of justification; and (5) damages resulting from defendant's wrongful inducement of the breach. Winkler v. Reed & Sons, 638 N.E.2d 1228, 1235-1236 (Ind. Sup. Ct. 1994) (plaintiff's claim failed, in part, because he did not contend that defendants made misrepresentations, applied economic pressure or made threats which would induce a breach by plaintiff's employer).

As Tech Data argues, Urbanski's intentional interference claim fails because she cannot show the existence of a valid and enforceable contract with her alleged prior employers nor an inducement of breach of a relationship (contractual or otherwise) by Tech Data. Urbanski's pleadings indicate that she did not have a valid and enforceable contract with Ely Chemical. Urbanski admits that she had not even been interviewed by Ely Chemical for a regular position at the time she left her provisional position with Ely Chemical. Rather, Urbanski had scheduled an interview with Ely Chemical on March 19, 2006. (Amended Complaint, p. 2.) After she was recruited for a temporary job at Tech Data, "I informed. . . Ely Chemical . . . that I would be leaving. . . but would work one more day . . . which was on Friday, March 20, 2006." (Amended Complaint, p. 3). Thus, at the time Urbanski departed Ely Chemical, she did not have an employment contract, and cannot establish the first requirement for showing intentional interference. Moreover, Urbanski does not allege that Tech Data took any steps to induce Ely Chemical to break Urbanski's provisional arrangement with Ely Chemical. Instead, Urbanski admits that it was she who ended the relationship because a temporary position at Tech Data paid $5.00 an hour more than her temporary position with Ely Chemical. (Amended Complaint, p. 3.)

Because Urbanski admits that she had no regular position at Ely Chemical and she admits

6

that Ely Chemical took no steps to end the relationship based on conduct of Tech Data, she cannot state a claim for intentional interference with contract. Winkler, 638 N.E.2d at1235-1236.  Accordingly, this claim will be dismissed.

Urbanski alleges constructive fraud in paragraph a8 of her Amended Complaint.  Tech Data asserts that Urbanski has failed to state a claim. A claim of constructive fraud requires a plaintiff to satisfy the following five elements: (1) a duty owing by the defendant to the plaintiff due to their relationship; (2) violation of that duty by the making of material misrepresentations of past or existing facts or remaining silent when a duty to speak exists; (3) reliance thereon by the complaining party; (4) detriment to the complaining party as a proximate result thereof; and (5) the gaining of an advantage by the party to be charged at the expense of the complaining party. Rice v. Strunk, 670 N.E.2d 1280, 1284 (Ind. Sup. Ct. 1996); Romack v. Public Service Co. of Indiana, Inc., 499 N.E.2d 768, (Ind. App. Ct. 1986), rev'd on other grounds, Romack v. Public Service Co., 511 N.E.2d 1024 (Ind. 1987). As Tech Data points out, Urbanski's Amended Complaint demonstrates that she cannot establish the first, fourth, and fifth elements of a constructive fraud claim.

Moreover, Urbanski has not shown that she and Tech Data, during her recruitment, had the type of special duty necessary to invoke constructive fraud. Typically, the duty requirement under the first element arises in the context of a fiduciary relationship. Sanders v. Townsend, 582 N.E.2d 355, 358 (Ind. Sup. Ct. 1991). However, the duty requirement may also result when the plaintiff demonstrates that the relationship is such that there is an implied level of trust and confidence between the plaintiff and the defendant. Lucas v. Frazee, 471 N.E.2d 1163, 1166 (Ind. App. Ct. 1984). Such relationships include that of an attorney and client, guardian and

7

ward, principal and agent, pastor and parishioner, husband and wife and parent and child. Lucas, 471 N.E.2d 1166-1167.

According to Urbanski's Amended Complaint, at the time she left Ely Chemical, the relationship between the parties was one of potential employee and potential employer. This is not the fiduciary or special duty relationship required to satisfy the first element of a claim of constructive fraud. Lucas, 471 N.E.2d at 1168, 1169 (plaintiff failed to establish relationship duty despite the fact that parties were sisters, plaintiff was in poor health and defendant cared for her, plaintiff relied on defendant for her transportation and arranging plaintiff's financial affairs); Strong v. Jackson, 777 N.E.2d 1141, 1147-1148 (Ind. App. Ct. 2002) (finding relationship when the relationship was one of "continuous trust and confidence" beyond even that of the power of attorney held by defendant); Rice, 670 N.E.2d at 1288-1289 (relationship of partner in law firm to other partner was not sufficient to satisfy first element of constructive fraud).

Urbanski's pleadings also demonstrate that she cannot establish the fourth element of a constructive fraud claim. Urbanski cannot show that she suffered the type of detriment required under Indiana law. Urbanski allegedly left a provisional job at Ely Chemical making $10.00 an hour for a provisional job at Tech Data making $15.00 an hour. Thus, far from suffering a detriment, Urbanski obtained a significant benefit. Romack, 499 N.E.2d at 775 (leaving prior employer, moving, and incurring additional mortgages are not sufficient independent detriment.) Moreover, Urbanski received what had been allegedly promised to her unconditionally, that she would perform temporary services for Tech Data for two months.

Likewise, Urbanski's Complaint shows that she did not have the special skills that would allow her to claim that Tech Data gained a benefit from her employment. Urbanski's Amended

8

Complaint demonstrates that in her prior provisional job, she "assist[ed] in covering the front office, performing customer service duties" and filing paperwork, during the two weeks prior to her scheduled interview for an administrative position. (Amended Complaint, p. 2.) These type of general skills are possessed by numerous people searching the marketplace for work. See Romack, 499 N.E.2d at 775 (state police captain with 25 years experience applying for corporate security manager position may have had the special qualifications necessary to benefit the defendant).

Finally, Urbanski is not permitted to convert Tech Data's alleged contractual failings into a claim for constructive fraud. Drudge v. Brandt, 698 N.E.2d 1245, 1250 (Ind. App. Ct. App. 1998); Needham v. Innerpac, Inc., 2006 U.S. Dist. LEXIS 70607 (N.D. Ind. 2006). In Needham, this Court addressed a claim of alleged breach of employment contract. The Court rejected the plaintiff's additional claim of constructive fraud because the plaintiff offered "no legal authority that would justify treating the alleged facts supporting the constructive fraud claim differently from any other breach of contract claim." Needham, 2006 U.S. Dist. LEXIS 70607 at *44. Similarly, Urbanski will not be permitted to convert her claim that Tech Data did not follow through with its alleged contract into a claim for constructive fraud.

Urbanski alleges defamation in paragraph a8 of her Amended Complaint.  Tech Data argues that Urbanski has failed to state a claim for defamation. Under Indiana law, the elements of a defamation claim are: (1) a communication with defamatory imputation, (2) malice, (3) publication, and (4) damages. Trail v. Boys and Girls Clubs of Northwest Indiana, 845 N.E.2d 130, 136 (Ind. 2006.) Any statement actionable for defamation must not only be defamatory in nature, but false. Id., citing Doe v. Methodist Hospital, 690 N.E.2d 681, 687 (Ind. 1997).

9

"Permitting defamation actions to proceed without the inclusion of the alleged statement would sanction claims brought by individuals who allege northing more than that someone must have said something defamatory about them, or else they would not have been terminated or unable to secure new employment. While many of these individuals might have an actual grievance, merely making such an accusation does not establish a claim sufficiently to permit courts to determine its legal legitimacy." Trail, 845 N.E.2d at 137.

Although Urbanski need not spell out every element of a defamation claim, she must provide some information about the alleged defamatory communication and whether it is actually false. In her Amended Complaint, Urbanski does not provide any additional facts regarding any statements that were made about her, how Tech Data defamed her, to whom they made any false statements and any damage which she suffered as a result of these defamatory statements. Other than making the assertion that Tech Data "defamed her character," Urbanski provides no other facts that put Tech Data on notice of a plausible entitlement to relief, therefore, the defamation claim will be dismissed.

Urbanski alleges intentional and malicious infliction of emotional distress in paragraph a10 of her Amended Complaint.  Tech Data asserts that Urbanski has failed to state a claim. To sustain a claim of intentional infliction of emotional distress, Urbanski must establish that the "extreme and outrageous" conduct intentionally or recklessly caused severe emotional distress. Sullen v. Midwest ISO, 2005 U.S. Dist. LEXIS 43952, * 12 (S.D. Ind. July 27, 2005), citing Powdertech v. Joganic, 776 N.E. 2d 1251, 1264 (Ind. Ct. App. 2002). As Tech Data notes, Urbanski has not alleged conduct that could possibly support a conclusion that Tech Data behaved in an "extreme and outrageous manner." Indiana law sets a high bar for conduct which

10

is considered extreme and outrageous:

> Conduct is extreme and outrageous only where it has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'

Id. at 12-13, citing Conwell v. Beatty, 667 N.E.2d 768, 777 (Ind. Ct. App. 1996). The conduct alleged against Tech Data does not meet this standard, and her claim will be dismissed.

Urbanski alleges wrongful termination in paragraph a11 of her Amended Complaint. Tech Data argues that this paragraph fails to state a claim. Indiana regards an employee at-will to be presumptively terminable at the will of either party. The Indiana Supreme Court has recognized a public policy exception to this doctrine in two instances: where an employee-at-will was discharged for filing a worker's compensation claim, see Frampton v. Central Ind Gas. Co., 297 N.E.2d 425, 428 (Ind. 1973), or for refusing to commit an illegal act for which he would be personally liable, see McClanahan v. Remington Freight Lines, Inc., 517 N.E.2d 390, 392-93 (Ind. 1998).

Urbanski has not alleged any facts to fall within the public policy exceptions to the employment at-will doctrine. Urbanski alleges that "Defendant terminated the Defendant's and Plaintiff's employer-employee relationship without "good cause" under the law. Defendant is guilty of wrongful termination under the law." (See Amended Complaint, p. 13, ¶ a11.) Urbanski's Amended Complaint does not contain any allegations that could be construed as affecting the at will employment relationship. In addition, Urbanski has not alleged that the termination of her assignment falls within one of the two public policy exceptions identified by

the Indiana Supreme Court. The public policy exception to the employment-at-will doctrine has been narrowly construed and the Indiana Supreme Court has been reluctant to broaden the public policy exception absent direction from the state legislature. See Groce v. Eli Lilly, 193 F.3d 496, 503 (7th Cir. 1999). Because Indiana does not recognize Urbanski's alleged theory of wrongful termination as an exception to the employment at-will doctrine, her claim will be dismissed for failure to state a cause of action upon which relief may be granted.

In paragraph a12, Urbanski alleges breach of contract by Tech Data because Tech Data failed to provide Urbanski with permanent employment after she worked in a temporary capacity for two months. (Amended Complaint, p.13.)   Tech Data argues that Urbanski's Amended Complaint fails to allege the existence of a written contract. It is clear that Urbanski admits that there is no writing to evidence her alleged arrangement with Tech Data in paragraph a.32. (Amended Complaint, p.16.) Indiana's Statute of Frauds states, in relevant part:

> A person may not bring any of the following actions unless the promise, contract, or agreement on which the action is based, or a memorandum or note describing the contract, or agreement on which the action is based, is in writing and signed by the party against whom the action is brought or by the party's authorized agent:
>
> ***
>
> (5) An action involving an agreement that is not to be performed within one (1) year from the making of the agreement.

I.C. § 32-2-1-1(b) (2006). To satisfy the Statute of Frauds, either the agreement sought to be enforced must be in writing, or there must be "a memorandum or note" describing the promise, contract or agreement. See The Coca-Cola Company, et al. v. Babyback's International, Inc., 841 N.E.2d 557, 562 (Ind. 2006), citing I.C. § 32-31-1-1(b).

Tech Data argues that the type of contract contemplated by Urbanski in her Amended Complaint, an agreement for permanent employment, cannot be performed within one year, and therefore must be reduced to a writing to satisfy the Statute of Frauds. Urbanski argues that a permanent position "could possibly" have been completed within one year and thus not be governed by the statute of frauds.  This argument is illogical and unsupported by any case law. This court concludes that because the alleged contract was not reduced to writing, it is unenforceable. See Wior v. Anchor Industries, Inc., 669 N.E.2d 172, 175 (Ind. 1996) (alleged oral agreement for permanent employment did not constitute a contract claim because it was not in writing as required by the Statute of Frauds.)  Accordingly, Urbanski's breach of contract claim will be dismissed.

Tech Data next argues that Urbanski's allegations regarding "the promise for permanent employment" do not alter the at-will employment relationship. Indiana follows the doctrine of employment at-will, under which employment may be terminated by either party at-will, with or without reason. Wior v. Anchor Industries, Inc., 669 N.E.2d at 175, citing Speckman v. City of Indianapolis, 540 N.E.2d1189, 1192 (Ind. 1998). However, the at-will employment relationship may be converted to a relationship in which the employer may terminate the employee only for good cause. Id. In order to achieve the termination-for-good-cause status, the employee must provide adequate independent consideration to the employer. Id. The Indiana Supreme Court has held that:

> As a general rule, Indiana employment relationships are terminable at the will of either party. If an employee gives independent consideration for an employment contract, however, the employer may terminate the employee only for good cause without incurring liability for its actions.

Id.

Indiana Courts have identified fact scenarios in which the employee's act or forbearance might provide adequate independent consideration sufficient to support an employment contract terminable only for good cause. See Romack v. Public Service Co., 511 N.E.2d 1024 (Ind. 1987) (an employee surrendering his own permanent employment with the express understanding that he would not do so except for assurance from employer of receiving the same protections in the new job could provide adequate consideration); Ohio Table Pad. Co. v. Hogan, 424 N.E.2d 144, 146 (Ind. Ct. App. 1981) (an employee abandoning his own competing business could provide adequate consideration); Mt. Pleasant Coal Co. v. Watts, 151 N.E. 7 (Ind. Ct. App. 1926) (conveying a valuable coal lease in exchange for employment could provide adequate consideration); Toni v. Kingan & Co., 15 N.E.2d 80 (Ind. 1938) (holding that releasing the employer from liability on a personal injury claim would constitute adequate independent consideration.) Tech Data maintains that Urbanski cannot satisfy this criteria.

Urbanski alleges that she "left a temporary assignment with Ely Chemical" where she had a chance to "interview for permanent employment" and agreed to work for Tech Data because "Tech Data promised her a permanent job after she performed well for two months." (Amended Complaint, p.3.) Urbanski alleges only that she had a "chance" to interview for permanent employment at Ely Chemical. Thus, she admits she was not leaving permanent employment to accept the temporary assignment at Tech Data. See Ohio Table Pad Co. of Indiana, 424 N.E.2d at 146 (in moving and/or giving up a prior job, there is no independent detriment to the employee, and not an independent benefit bestowed upon the new employer.) Clearly, Urbanski's allegations fail to allege adequate independent consideration (i.e., giving up permanent employment) to convert her at-will relationship to a contractual relationship.

14

Therefore, Urbanski's claim for breach of contract will be dismissed.

Urbanski asserts race discrimination claims in paragraph a6, a13, a14-a21. Urbanski claims that Tech Data discriminated against her and a class of unnamed individuals "in the promotion and hiring of a member of a protected class." (Amended Complaint at a13; see also page 10 (objecting to "standard[s] or policies for selecting or promoting employees,"), paragraph a17 ("not giving the Plaintiff permanent employment as promised.") and paragraph a18 ("promotion and hiring")). As support for this claim, Urbanski claims:

1. I am a member of a protected class-African American.

2. I applied for a position in which I was qualified.

3. I was rejected by the employer, and

4. The employer continued to seek applicants for the position or filled the position with a person not in a protected class.

(Amended Complaint at 10).

Urbanski's allegations indicate that she is asserting she has met the general prima facie burden shifting method established under McDonnell-Douglas. However, in the Seventh Circuit, a plaintiff must prove more than "equal qualifications" in order to establish a hiring or promotion claim.

In the Seventh Circuit, a plaintiff in a promotion or hiring case must show that the gap in credentials between the plaintiff and comparable non-protected employees "must be so substantial as to slap you in the face." Hudson v. Chicago Transit Authority, 375 F.3d 552, 562 (7th Cir. 2004); Millbrook v. IBP, Inc., 280 F.3d 1169, 1180-1181 (7th Cir. 2002) (plaintiff's credentials must be so superior to the credentials of the person selected for the job that no reasonable person could have chosen the successful candidate over the plaintiff for the job in

15

question).

Tech Data argues that Urbanski's complaint suffers from the same deficiencies as the plaintiff's complaint in Bell Atlantic. In Bell Atlantic, the plaintiff alleged that the anti-trust defendant engaged in "parallel conduct." Bell Atlantic, 127 S. Ct. at 1963.  Like a discrimination *prima facie* case, the Supreme Court noted that parallel conduct is admissible evidence from which a fact finder may infer liability. Bell Atlantic, 127 S. Ct. at 1964. However, the Supreme Court noted that proof of parallel conduct, with no further showing, would not survive a motion for directed verdict or summary judgment, and that a "formulaic recitation of a cause of action will not do." Bell Atlantic, 127 S. Ct. at 1964-1965.

Because Urbanski's claims of a general prima facie case do not suffice to show that she is entitled to relief (she does not claim that she was more qualified than her comparators) under Title VII or Section 1981, her claim must be dismissed. Bell Atlantic, 127 S. Ct. at 1966 ("when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the minimum expenditure of time and money by the parties and the court.")

Tech Data next contends that Urbanski's count alleging violations of federal labor laws fails to state a claim. Urbanski alleges that violations of federal labor laws in Paragraph a23 of her Amended Complaint. Urbanski does not cite any statutes or identify which federal labor laws Tech Data is alleged to have violated. Clearly, the allegations in Urbanski's Amended Complaint simply do not contain a minimal level of factual detail sufficient to give Tech Data fair notice of what the claim is and the grounds upon which it rests. See EEOC v. Concentra Health Services, Inc., 2007 U.S. App. LEXIS 18487, *13 (7th Cir. Aug. 3. 2007), citing Bell Atlantic Corp., 127

S. Ct. at 1964 – 1965. Therefore, Urbanski's claim that Tech Data violated federal labor laws will be dismissed because it fails to put Tech Data on notice of which laws it violated or the basis for any possible claim.

The court will now turn to Tech Data's motion to strike Urbanski's motion for judgment on the pleadings.  Fed. R. Civ. P. 12(c) sets forth the requirements for filing a motion for judgment on the pleadings. Fed. R. Civ. P. 12(c) states as follows:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(c).

A motion for judgment on the pleadings is generally not favored and courts apply a fairly restrictive standard in ruling on the motion. Fox v. Terra Haute Independent Broadcasters, Inc., 701 F. Supp. 172, 173 (S.D. Ind. 1988). "In order to prevail, the movant must establish that no genuine issues of fact remain and that he is entitled to judgment as a matter of law." See id, citing C. Wright and A. Miller, Federal Practice and Procedure § 1368 (1969).

Tech Data correctly argues that Urbanski's motion for judgment on the pleadings is premature and inappropriate. First, Urbanski is attempting to move for judgment on the pleadings before the pleadings are closed. Second, Urbanski, in her motion, fails to establish that there are no genuine issues of fact that remain entitling her to judgment on the pleadings.

Urbanski attempts to move for a judgment on the pleadings on causes of action and allegations that are currently at issue before this Court. On September 7, 2007, Tech Data filed a

motion to dismiss Urbanski's Amended Complaint in its entirety. Tech Data's motion to dismiss is currently pending and, therefore, the pleadings in this matter are not closed.

Rather than responding to the pending motion to dismiss as directed by the court, Urbanski filed a motion for judgment on the pleadings. In her motion, Urbanski fails to identify the reasons she is entitled to a judgment or explain how no issue of facts are present. Instead, Urbanski filed, as an attachment to the motion, her alleged damages calculation requesting approximately twenty-two million dollars in relief from Tech Data.

On October 26, 2007, Urbanski filed a brief in support of her motion. However, she still does not argue that no material facts remain in dispute. Rather, Urbanski makes additional allegations against Tech Data. In its reply in support of motion to strike, Tech Data argues that Urbanski's brief does not show that Tech Data has no dispute with these allegations. Tech Data further reiterates its argument that Urbanski's motion is premature. This court agrees that, as the pleadings in this matter are not closed and Urbanski has failed to establish that no genuine issues of facts exist, Urbanski's motion is premature and inappropriate. Therefore, the motion for judgment on the pleadings will be stricken.

## Conclusion

Based on the foregoing, Tech Data's motion to dismiss (DE 29) is hereby GRANTED.

Further, Tech Data's motion to strike (DE 37) Urbanski's motion for judgment on the pleadings (DE 35) is also hereby GRANTED.

Entered: January 11, 2008.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court